IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WANDA LEWIS                    )
                               )
v.                             )        No. 3:14-1715
                               )
CAROLYN W. COLVIN,             )
        Acting Commissioner of )
        Social Security        )


To: The Honorable Todd J. Campbell, District Judge


**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final

decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for

Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). The case

is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry

No. 12), to which Defendant has filed a response (Docket Entry No. 15).

Upon review of the administrative record as a whole and consideration of the parties' filings,

the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act

is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that

Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) should be

DENIED

# I. INTRODUCTION

Plaintiff protectively filed for SSI in February of 2011. *See* Transcript of the Administrative Record (Docket Entry No. 10),[1] at 68-69. She alleged a disability onset date of January 1, 2006. AR 11. Plaintiff asserted that she was unable to work because of diabetes, bipolar disorder, panic attacks, high blood pressure, memory problems, speech problems, and a back problem. AR 82.

Plaintiff's applications were denied initially and upon reconsideration. AR 78-85. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ J. Dennis Reap on January 25, 2013. AR 35. On March 1, 2013, the ALJ issued a decision unfavorable to Plaintiff. AR 8. On June 18, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR 1-6, thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on March 1, 2013. AR 8-27. Based upon the record, the ALJ made the following enumerated findings:

1.      The claimant has not engaged in substantial gainful activity since February 22, 2011, the application date (20 CFR 416.971 *et seq.*).

                                    ***

2.      The claimant has the following severe impairments: degenerative disc disease, bipolar disorder, and panic disorder without agoraphobia (20 CFR 416.920(c)).

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s).

***

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

***

4.     The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except claimant can lift and carry a maximum of 10 pounds; claimant can understand and remember simple and detailed instructions; claimant can maintain attention, concentration, persistence, and pace for at least 2 hours despite periods of increased signs and symptoms; claimant can interact appropriately with the general public and coworkers on an occasional basis; claimant can adapt to infrequent changes in the workplace.

***

5.     The claimant is unable to perform any past relevant work (20 CFR 416.965).

***

6.     The claimant was born on October 30, 1968 and was 42 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

***

10.     The claimant has not been under a disability, as defined in the Social Security
        Act, since February 22, 2011, the date the application was filed (20 CFR
        416.920(g)).

AR 13-21.


# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters

only to the extent necessary to analyze the parties' arguments.


# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only

questions before this Court upon judicial review are: (i) whether the decision of the Commissioner

is supported by substantial evidence and (ii) whether the Commissioner made legal errors in the

process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401,

91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in

context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010);

*Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938));

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision

must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by Plaintiff,

but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed.App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work.

*Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the

claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluation process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, AR 13, but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 14–16. At step four, the ALJ found that Plaintiff's impairments rendered her unable to perform any past relevant work, AR 20, which thus triggered the fifth step of the inquiry. At step five, the ALJ found that Plaintiff's RFC allowed her to perform light work with certain limitations as set out in the ALJ's findings, AR 13-21, and that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 20-21.

## D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by:  1) failing to properly consider all of Plaintiff's impairments and by failing to provide sufficient reasons for not finding these impairments to be severe impairments; 2) failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p; 3) failing to properly consider limitations assigned by the consultative examiner; 4) failing to properly consider and weigh the opinion of Diane Smith, FNP; and 5) failing to properly evaluate and assess the credibility of Plaintiff's statements.  *See* Docket Entry No. 12-1 at 1-2.  Plaintiff argues that the ALJ committed reversible error at steps two, three, and five of the evaluation process, and that the Commissioner's decision should therefore be reversed, or in the alternative, remanded for further consideration by a new ALJ.

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).  "In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).  Plaintiff's assertions of error are addressed as follows:

1.  <u>The ALJ's failure to properly consider all of Plaintiff's impairments and failure to provide sufficient reasons for not finding these impairments to be severe.</u>

Plaintiff argues that, in addition to the severe impairments designated by the ALJ, she has other impairments which affect her ability to perform at the RFC assigned to her. *See* Docket Entry No. 12-1 at 6-7. These impairments include migraine headaches, hypertension ("HTN"), lumbar radiculopathy, major depressive disorder, degenerative joint disease ("DJD") of the right hip, bereavement, lumbar spinal stenosis, insomnia, and diabetes mellitus ("DM") with peripheral neuropathy. *Id.* at 6. Plaintiff argues that such impairments "were diagnosed and well-documented in the record," and that they "cause more than a 'slight abnormality' on [her] ability to function." *Id.* Defendant contends that several of these impairments were not diagnosed by an acceptable medical source pursuant to 20 CFR § 416.913 (2014), and therefore such impairments cannot constitute severe impairments pursuant to 20 CFR § 416.920(a)(4)(ii) (2014). *See* Docket Entry No. 15 at 5, n.2. Defendant further contends that because the ALJ found that Plaintiff had at least one severe impairment and considered Plaintiff's overall impairments in combination, a remand for the ALJ to identify additional impairments as severe is not necessary. *Id.* at 5.

It is well-established that a claimant bears the burden to show that a medically determinable impairment is severe and that it meets the twelve-month durational requirements of the Act. *See Harley v. Comm'r of Social Sec.*, 485 Fed.App'x 802, 803 (6th Cir. 2012). A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 CFR §§ 404.1520(c), 416.920(c)).[2] The Sixth Circuit has

---

[2] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for

construed the step two severity evaluation as a "*de minimis* hurdle" in which an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The goal of the test at step two is to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).

The Court notes that while Plaintiff has alleged additional impairments, both physical and mental, Plaintiff has failed to reference any evidence in the record which demonstrates that such additional impairments had or will have any impact on her ability to perform work activities. Plaintiff states baldly that such additional impairments "are more than a 'slight abnormality' on Plaintiff's ability to function." *See* Docket Entry 12-1 at 6. This is merely a recitation of the *de minimis* standard, as expressed in *Higgs*, *supra*. Further, despite Plaintiff's contention to the contrary, the ALJ addresses the severity of these additional impairments, as well as his reasons for not finding such additional impairments to be severe, over the course of several pages in his decision. AR 13-20.

Additionally, the Court agrees with Defendant that any error by the ALJ in failing to find Plaintiff's additional impairments to be severe would not require reversal or remand because the ALJ found that Plaintiff had other impairments which were severe. If an ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives step two of the screening process, 20 CFR § 404.1520(a)(4); *Anthony v. Astrue*, 266 Fed.App'x 451, 457 (6th Cir. 2008), and both severe and non-severe impairments are to be considered by the ALJ in the remaining steps of

---

seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b).

the disability evaluation process. 20 CFR §§ 404.1523 and 404.1545(a)(2). Thus, courts have consistently held that there is no reversible error when the ALJ fails to find that some impairments are severe, but finds that other impairments are severe and proceeds with the next step of the evaluation process. *Maziarz v. Sec'y Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). *See McGlothin v. Comm'r of Soc. Sec.*, 299 Fed.App'x. 516, 522 (6th Cir. 2008); *Anthony, supra; Fisk v. Astrue*, 253 Fed.App'x 580, 583 (6th Cir. 2007). In this case, the ALJ found that Plaintiff suffered from three severe impairments, including degenerative disc disease, bipolar disorder, and panic disorder without agoraphobia.[3] AR 13-14. The ALJ's failure to find that Plaintiff's additional impairments were severe did not result in a conclusion that Plaintiff was not disabled, which would have ended the five-step evaluation process. Therefore, this assertion of error amounts to harmless error and does not warrant relief.

2. The ALJ's failure to include a function-by-function assessment in the RFC assessment pursuant to SSR 96-8p.

Plaintiff argues that the RFC assessment performed by the ALJ was inadequate. Plaintiff claims that the ALJ's failure to state "how long [she] could sit, stand, or walk," as well as the ALJ's failure to address limitations with respect to pushing or pulling, renders the RFC insufficient. *See* Docket Entry No. 12-1 at 7. Plaintiff argues that the RFC therefore does not conform to the requirements of Social Security Ruling ("SSR") 96-8p and should be remanded for further consideration and proper evaluation of her RFC. The Court finds this argument unpersuasive.

_____

[3]Plaintiff incorrectly states that the ALJ found Plaintiff has "panic disorder *with* agoraphobia." *See* Docket Entry 12-1 at 4 (emphasis added).

As noted by Plaintiff, SSR 96–8p requires an ALJ to individually assess the exertional capacities of the claimant when evaluating a claimant's RFC, which include sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96–8p also requires the ALJ to individually assess the claimant's nonexertional capacities, which include manipulative, postural, visual, communicative, and mental functions. SSR 96-8p further provides that the "RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," and that "[e]ach function must be considered separately."

As discussed by Defendant, the Sixth Circuit has held that, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require the ALJ to produce such a detailed statement in writing" because there is a difference between "what an ALJ must consider and what an ALJ must discuss in a written opinion." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed.App'x 542, 547 (6th Cir. 2002). Significantly, SSR 96–8p states that the ALJ must consider each function separately, though it does not state that the ALJ must discuss each function separately in the narrative of the decision. The Sixth Circuit has held that an ALJ's RFC assessment complies with SSR 96–8p as long as the RFC specifies the claimant's exertional and nonexertional limitations. *Id*. In specifying such limitations, the ALJ need only explain how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform work related activities, and explain the resolution to any inconsistences in the record. *Id*. at 548. Further, SSR 96-8p does not require the ALJ to discuss those capacities for which no limitation is alleged. *Id*. at 547.

Upon review, the Court finds no error in the ALJ's RFC assessment. Following review of the objective medical evidence of record and Plaintiff's testimony, the ALJ determined that Plaintiff

retained the RFC to "perform light work" as defined in 20 CFR 416.967(b) with the following limitations:

> [C]laimant can lift and carry a maximum of 10 pounds; claimant can understand and remember simple and detailed instructions; claimant can maintain attention, concentration, persistence, and pace for at least 2 hours despite periods of increased signs and symptoms; claimant can interact appropriately with the general public and coworkers on an occasional basis; claimant can adapt to infrequent changes in the workplace.

AR 16. The ALJ's decision included a lengthy discussion of Plaintiff's exertional and nonexertional limitations, as well as an explanation of how the evidence in the record supports his conclusions, including citations to relevant medical notes. AR 16-20. The Court finds that the ALJ provided a comprehensive assessment of Plaintiff's limitations, and included in his RFC only those limitations that he found to be supported by the record.

Plaintiff argues that the RFC in this case is insufficient because the ALJ "did not specify how long [Plaintiff] would be unable to maintain attention, concentration, persistence, and pace after the 2 hour period before [she] could sufficiently maintain attention, concentration, persistence, and pace again." *See* Docket Entry 12-1 at 7. This argument is without merit. The Sixth Circuit has held that "breaks every two hours are normal and assumed in most jobs." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed.App'x 719, 730 (6th Cir. 2013) (citing SSR 96-9p, 61 Fed.Reg. 34478 (July 12, 1996) (recognizing that an individual receives a morning break, a lunch period, and an afternoon break in approximately two hour intervals)). As Defendant notes, the ALJ therefore found that Plaintiff exhibited the ability to maintain attention, concentration, persistence, and pace required during a normal workday. The ALJ's failure to discuss Plaintiff's functions beyond this two-hour period does not require a remand.

14

Plaintiff further contends that the ALJ failed to adequately consider "additional limitations" recommended by the other physicians who examined Plaintiff in this case. *See* Docket Entry 12-1 at 8. However, the only specific limitation cited by Plaintiff in support of this contention pertains to postural activities. *Id.* Plaintiff appears to reference the opinion of Dr. Michael Ryan, a non-examining Disability Determination Service ("DDS") physician who performed a physical residual functional capacity assessment on June 4, 2011. AR 890-898. Dr. Ryan found that Plaintiff's postural limitations would allow her to "frequently" climb, balance, stoop, kneel, crouch, and crawl. AR 892. Of note, Dr. Ryan also found that Plaintiff would be able to occasionally lift and carry 50 pounds, frequently carry 25 pounds, stand and walk for six hours, and sit for six hours, AR 891, all of which are significantly *less* restrictive limitations than those imposed by the RFC adopted by the ALJ. As discussed above, SSR 96-8p requires that the ALJ consider each function separately. It does not require, as Plaintiff contends, that the ALJ detail each function separately in the narrative of his decision. The ALJ similarly discounted the opinion of Dr. Janet Pelmore, another non-examining DDS physician, who opined that none of Plaintiff's impairments were severe. AR 656. The ALJ found that Dr. Pelmore did not "adequately consider the [Plaintiff's] degenerative disc disease," and therefore refused to incorporate her findings into his RFC. This does not demonstrate a lack of consideration of the DDS opinions by the ALJ, but rather a disagreement with the findings. The ALJ is "not required to discuss all the evidence, as long as [his] factual findings as a whole show that [he] implicitly considered the record as a whole." *Id.* The Court finds no merit in this assertion of error.

3.  <u>The ALJ's failure to properly consider limitations assigned by the consultative examiner.</u>

Plaintiff also argues that the ALJ improperly considered the opinion of the consultative examiner, Dr. William Huffman, by failing to discuss all of the limitations assigned by Dr. Huffman in the opinion.  Plaintiff points to the following limitations, which were assigned but not discussed in the RFC assessment: "[able to] sit for 20 minutes at a time[4]; stand for 1 hour at a time; walk for 30 minutes at a time; occasionally push/pull with the bilateral upper extremities; occasionally climb ladders or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl."  *See* Docket Entry 12-1 at 9-10.  Plaintiff contends that because the ALJ "failed to include these limitations in the RFC and failed to explain why he failed to include these limitations in the RFC, the decision is internally inconsistent and insufficient."  *Id.* at 10.  Defendant responds simply that the ALJ properly considered all of the medical opinions and "incorporated the credible limitations" into his RFC assessment.  *See* Docket Entry 15 at 8.

Plaintiff claims that the ALJ's opinion is invalid because it does not discuss all of the limitations proffered by Dr. Huffman, and claims that these additional limitations, all of which involve exertional functions, "could result in the [Plaintiff] being unable to perform the jobs relied on in the decision."  *See* Docket Entry 12-1 at 10.  Significantly, Plaintiff does not argue that any of these additional limitations contradict those included by the ALJ in his RFC assessment.  Plaintiff also fails to cite any rule or case which requires an ALJ to provide a detailed explanation of each and every limitation suggested by a consultative examiner if the ALJ gives significant weight to the opinion of said consultative examiner.

---

[4]Plaintiff appears to have misstated this limitation.  Dr. Huffman's limitation states that Plaintiff can sit for 30 minutes at one time without interruption.

The record shows that the ALJ summarized the pertinent findings from Dr. Huffman's consultative examination as follows:

> He noted the claimant's allegations of diabetes mellitus, speech problems, history of stroke, degenerative disc disease, and carpal tunnel syndrome. He observed the claimant to have near full ranges of motion in the dorsolumbar spine and a negative straight leg raise bilaterally. Her gait and station were normal. However, she had pain in the lumbosacral paravertebral region on palpation and motion. Based on the history and examination, Dr. Huffman diagnosed degenerative disc disease of the back and diabetes mellitus. He made no further physical diagnoses. He opined the claimant would not be able to lift over 10 pounds; she could sit and walk 6 hours each in an 8-hour day and stand 7 hours in an 8-hour workday (Ex. B18F). The undersigned finds this opinion is consistent with the examination and the record and gives it significant weight insofar as it is consistent with the above residual functional capacity.

AR 17.

The ALJ is charged with the responsibility of determining the RFC based on his evaluation of the medical and non-medical evidence. *Rudd,* 531 Fed.App'x at 728 . The ALJ is not required to discuss every piece of evidence in the record for his decision to stand. *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.App'x 661, 664 (6th Cir. 2004). Based on the above discussion of Dr. Huffman's findings, it is clear that the ALJ reviewed and considered Dr. Huffman's opinion in light of the record as a whole and incorporated some of the prescribed limitations in his RFC.[5] The fact that the ALJ decided against incorporating all of Dr. Huffman's limitations into the RFC is not error. Dr. Huffman evaluated Plaintiff on a single occasion on May 12, 2011, as part of a consultative examination. AR 863-871. This limited interaction with Plaintiff thus renders Dr. Huffman a

---

[5] The Court also notes that, despite Plaintiff's apparent reliance on the opinion of Dr. Huffman regarding her physical limitations, Dr. Huffman's medical assessment included the opinion that, "really [Plaintiff] is not disabled physically." AR 865.

nontreating medical source.[6] *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007);

*Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.App'x 496, 506-07 (6th Cir. 2006) (a single visit does not

constitute an ongoing treatment relationship). The "treating physician rule" therefore does not apply,

and the ALJ was not required to give controlling weight to Dr. Huffman's opinion, nor was he

required to "give good reasons" for the weight he accorded to the opinion of Dr. Huffman. *Smith*,

482 F.3d at 875-76. *See also* 20 CFR § 404.1527(c)(2). The ALJ was not required to specifically

incorporate all of Dr. Huffman's recommended limitations into the RFC assessment. *See Norris*

*v. Comm'r of Soc. Sec.*, 461 Fed.App'x 433, 439 (6th Cir. 2012) ("a claimant is entitled under the

SSA only to reasons explaining the weight assigned to his treating sources."). Plaintiff's assertion

of error is therefore without merit.


4. The ALJ's failure to properly consider and weigh the opinion from Diane Smith, FNP.

Plaintiff next argues that the ALJ erred by not properly considering the opinion of Diane

Smith, FNP ("FNP Smith"), a family nurse practitioner who was Plaintiff's primary care provider.

AR 18. Plaintiff states that even though FNP Smith is not an "acceptable medical source," SSR 06-

3p, based on her status as a nurse practitioner, evidence from non-acceptable medical sources is

permitted to show the severity of Plaintiff's impairments and how they affect Plaintiff's ability to

function, pursuant to SSR 06-3p. Plaintiff further argues that the ALJ incorrectly found that Plaintiff

admitted she could lift up to ten pounds, when Plaintiff had in fact stated during her hearing that she

---

[6] A nontreating source is described as "a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]." 20 CFR §§ 404.1502, 416.902.

was instructed not to lift more than five pounds. *See* Docket Entry 12-1 at 13. Plaintiff points to the

ALJ's terse discussion of the five-pound lifting restriction recommended by FNP Smith:

> Diane Smith, F.N.P., the claimant's primary care provider, submitted a statement indicating the claimant could lift no more than 5 pounds (Ex. 37F). While Ms. Smith has a professional relationship with the claimant, the record or the examination of Dr. Huffman does not support this restriction. Furthermore, the claimant testified she could lift no more than 10 pounds. Therefore the undersigned gives Ms. Smith's opinion little weight.

AR 18. Plaintiff argues that the ALJ improperly discounted FNP Smith's opinion based on an

inaccurate reading of the transcript from the oral hearing, as Plaintiff had actually testified that she

was told to lift no more than five pounds. The transcript from the administrative hearing reveals the

following exchange between Plaintiff and her attorney:

> Q:  And how much weight would you estimate you can lift and carry at a time before you need to put it down?
>
> A:  I don't know how much that would be because they told me not to – don't lift nothing over no five pounds.

AR 41-42. Based on this exchange, it is evident that the ALJ misstated Plaintiff's testimony in his

opinion. Nevertheless, the record clearly indicates that Plaintiff stated on two separate occasions that

she could lift no more than ten pounds. AR 217, 236. Furthermore, Plaintiff's response during her

oral hearing does not contradict a finding that she could lift up to ten pounds. In response to a

question regarding how much weight she could carry, Plaintiff responds that she was *told* not to lift

more than five pounds, a recommendation which was ostensibly provided by FNP Smith. There is

no indication in the record that Plaintiff ever claimed that she could lift less than the ten pound

weight limit she had reported on two other occasions. *Id*. The Court therefore views the ALJ's

misstatement regarding Plaintiff's testimony as harmless error.

Plaintiff, however, claims that the ALJ based his decision to give little weight to FNP Smith's opinion on this misreading of Plaintiff's testimony. Plaintiff submits that the ALJ failed to properly consider FNP Smith's opinion, and claims that Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record is an attempt to "rewrite" the ALJ's opinion and provide "post-hoc rationalization" for the ALJ's decision to deny Plaintiff benefits. *See* Docket Entry 16 at 3. Plaintiff requests a remand for proper consideration of FNP Smith's opinion pursuant to the requirements contained in SSR 06-03p.

A nurse practitioner falls into the category of "other sources" which are not considered "acceptable medical sources" as defined by the SSA. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). However, a claimant may introduce:

> evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to—
>
>> (1) Medical Sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)[.]

20 CFR § 404.1513(d). SSR 06-03p clarifies the manner in which the ALJ should evaluate such "other sources" by explaining that:

> [a]lthough the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from "acceptable medical sources," these same factors can be applied to opinion evidence from "other sources." These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not "acceptable medical sources" as well as from "other sources," such as teachers and school counselors, who have seen the individual in their professional capacity. These factors include:
>
> • How long the source has known and how frequently the source has seen the individual;
>
> • How consistent the opinion is with other evidence;

• The degree to which the source presents relevant evidence to support an opinion;

• How well the source explains the opinion;

• Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

• Any other factors that tend to support or refute the opinion.

Finally, SSR 06–03p provides that:

> [s]ince there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

The record indicates that FNP Smith was a family nurse practitioner at Bell Family Medical Center, a medical facility where Plaintiff received a significant amount of treatment. AR 14, 778-813. The ALJ discussed the extensive treatment Plaintiff received at Bell Family Medical Center, including the objective medical findings demonstrated during that time:

> In terms of [Plaintiff's] alleged degenerative disc disease, staff at Bell Family Medical has treated [Plaintiff] for back pain for several years with pain levels ranging from 4-8 out of 10. On some occasions, drug analysis did not detect therapeutic levels of Soma (Exs. 5F, 14F, 23F, 25F, 35F, and 36F). An April 23, 2010 MRI of the lumbar spine revealed mild degenerative disc disease at L4-5 and L5-S1 with very slight concentric disc osteophyte bulges; minimal disc space narrowing at L1-2; mild facet arthropathy; and bilateral mild osteoarthritis in the sacroiliac joints. A Bone density study revealed osteoporosis with only a mildly increased risk of fracture compared to the young adult population. On May 3, 2010, [Plaintiff] underwent an epidural steroid injection without complications. An x-ray of the sacrum [and] coccyx on July 29, 2010, revealed mild degenerative disc disease of the lumbar spine (Ex. 11F). Records show a brief period of physical therapy, beginning in September 2010, wherein [Plaintiff] notes improvement after treatment.

AR 17. Additionally, Plaintiff answered multiple questions during her hearing before the ALJ regarding her treatment with Diane Smith and Bell Family Medical Center. AR 47, 54-55, 63-66. Plaintiff's attorney at the hearing went so far as to ask the ALJ to consider FNP Smith as an acceptable medical source:

> In regard to Diane Smith at Bell Family. Although she may be a nurse practitioner I would submit that she's an acceptable source. She's seen her for – she has seen [Plaintiff] for a number of – a number of years. So it's not someone that she just – she just met recently. Certainly not her next door neighbor. . .

AR 65-66. While this exchange does not prove that the ALJ properly considered FNP Smith's opinion, it indicates that the ALJ was well aware of FNP Smith's status as Plaintiff's primary care provider when he delivered his opinion. He acknowledged such in his opinion of FNP Smith's recommended five-pound lifting restriction: "[w]hile Ms. Smith has a professional relationship with [Plaintiff], the record or the examination of Dr. Huffman does not support this restriction." AR 18. Although the Court acknowledges the brevity of this evaluation, the ALJ has nevertheless demonstrated a consideration of FNP Smith's opinion in the context of the record as a whole. This is significant, pursuant to SSR 06-03p, as one factor in considering opinion evidence from "other sources" such as FNP Smith is "[h]ow consistent the opinion is with other evidence." In this case, the ALJ found that the overall record, including objective medical findings, preponderated against FNP Smith's five-pound lifting recommendation. AR 17-18. The failure of an ALJ to cite specific evidence does not indicate that it was not considered. *Daniels v. Commissioner*, 152 Fed.App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 Fed.App'x 727, 733 (6th Cir. 2004). Furthermore, as noted by Defendant, FNP Smith did not provide an explanation or objective evidence which would support the recommended five-pound lifting restriction. *See* Docket Entry 15 at 11; AR 1209.

Under SSR 06-03p, an additional factor in considering opinion evidence from a source such as a family nurse practitioner is "[h]ow well the source explains the opinion." In recommending a five-pound lifting restriction for Plaintiff, FNP Smith stated only that "[Plaintiff] has pain with many activities of daily living and has been recommended to restrict lifting to no more than 5 lbs." AR 1209. Without any further discussion of FNP Smith's basis for the five-pound lifting restriction, and in weighing this recommendation against the totality of the record, the Court does not find that the ALJ improperly discounted FNP Smith's opinion.

5. <u>The ALJ's failure to properly evaluate and assess the credibility of Plaintiff's statements.</u>

Plaintiff finally argues that the ALJ violated SSR 96-7p by failing to "provide sufficient rationale" as to how he weighed Plaintiff's credibility. *See* Docket Entry 12-1 at 15. Plaintiff claims that the ALJ improperly found that Plaintiff's allegations regarding her condition were not credible based on her expressed desire to find gainful employment on two separate occasions in 2010. *Id*. Plaintiff argues that "it is the desire of most disabled individuals to be employed," and therefore any statements by Plaintiff expressing such a sentiment "should enhance and support [her] subjective allegations that [she] is unable to work due to [her] disabling impairments." *Id*. Plaintiff further argues that the ALJ improperly discounted Plaintiff's credibility based on her discontinuance of physical therapy due to lack of insurance. *Id*. at 16. Therefore, Plaintiff argues, "it is obvious that the ALJ did not adequately evaluate and assess the credibility" of Plaintiff's statements pursuant to SSR 96-7p.

The ALJ is charged with evaluating the credibility of a claimant at the administrative hearing, and the ultimate assessment of a claimant's credibility rests with the ALJ. The ALJ's finding with

respect to the claimant's credibility is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). The ALJ's credibility determinations should not be discarded lightly, *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (internal citations omitted), and the ALJ "may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict." *Tyra*, at 1030. However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

Plaintiff accurately states that, pursuant to SSR 96-7p, it is not sufficient for the ALJ to make a "single, conclusory statement" acknowledging that he has considered the claimant's allegations, nor can he merely "recite the factors that are described in the regulations for evaluating symptoms." *See* Docket Entry 12-1 at 14 (quoting SSR 96-7p). The ALJ must instead explain his determination as to the claimant's credibility such that both the claimant and subsequent reviewers will know the weight given to the claimant's statements and the reason for that weight. *Rogers*, 486 F.3d at 248; SSR 96-7p. Consistency between a claimant's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers*, 486 F.3d at 247-48; *Kalmbach v. Comm'r of Soc. Sec.*, 2011 WL 63602, at *11 (6th Cir. 2011).

The ALJ found Plaintiff's allegations regarding her impairment-related symptoms and functional limitations to be "partially credible," and noted that her complaints of "back pain,

depression, and panic disorder are found to be supported within the total evidence of record." AR 20. Nevertheless, the ALJ found Plaintiff's "contentions regarding the severity thereof and related functional restrictions are not" supported by the record. *Id*. Plaintiff claims that the ALJ's only explicit reason for discrediting her allegations involved statements she made to mental health providers wherein she expressed a desire to be employed. *See* Docket Entry 12-1 at 15. The Court does not agree with this assessment. For instance, the ALJ specifically questioned the severity of Plaintiff's symptoms based on her testimony regarding her daily activities:

> The claimant alleges disabling back pain that radiates to her hips. However, the claimant reported she works in exchange for rent, does household chores, and cares for children (Exs. 6E, 11E). The claimant also testified she can lift up to 10 pounds.[7] The claimant alleges bipolar disorder and frequent panic attacks. However, the claimant testified her medication controls her panic attacks and she has had only one since starting the medication.

AR 17. The ALJ clearly questioned the extent to which Plaintiff's back pain is "disabling" when she performs the cited daily activities. The ALJ further questioned the frequency of Plaintiff's panic attacks when her testimony indicated that such episodes were controlled with medication. Additionally, the ALJ discussed and analyzed Plaintiff's symptoms with respect to their location, intensity, and frequency. AR 16-20. The ALJ also reviewed the effectiveness of Plaintiff's treatment, and discussed objective medical findings derived from MRI imaging and x-ray scans. *Id*. This analysis and review complies with the directives contained in SSR 96-7p.

---

[7] The Court again acknowledges that the ALJ misstated Plaintiff's testimony regarding how much she was able to lift, and that Plaintiff actually stated during the administrative hearing that she did not know how much she could lift. Nevertheless, as discussed *supra*, Plaintiff stated on two separate occasions that she could lift up to ten pounds. The Court therefore believes this error to be harmless.

Plaintiff next contends that her credibility was discounted because she had previously expressed a desire to gain employment. *See* Docket Entry 12-1 at 15. This is a severe misrepresentation of the ALJ's opinion. The ALJ clearly discussed Plaintiff's prior statements regarding employment. AR 18. However, this discussion was intended to demonstrate inconsistencies in Plaintiff's account as to why she did not have a job. The ALJ states:

> On March 1, 2010, the claimant reported her reasons for unemployment were a lack of transportation, need to care for step granddaughter and caring for her boyfriend's daughter (E[x]. 6F, p. 11). However, on March 29, 2010, the claimant discussed a desire to be employed and would look for jobs at a temporary agency (Ex. 6F, p. 17). In October 2010, the claimant noted again her desire to "get a job and get on with her life" (Ex. 6F, p. 21)[.]

*Id*. The reason for this discussion, evidently, is to both demonstrate Plaintiff's desire to gain employment, and contrast Plaintiff's previously reported reasons for unemployment (lack of transportation, childcare) with her current testimony that she cannot work because of severe physical and mental impairment. Therefore, the ALJ's discussion appropriately addresses an issue which impacts Plaintiff's credibility, in accordance with SSR 96-7p.

Contrary to Plaintiff's final assertion, the Court finds no evidence in the record that the ALJ used Plaintiff's lack of insurance to "damage and decrease" her credibility. *See* Docket Entry 12-1 at 16. The ALJ acknowledged that Plaintiff stopped attending physical therapy due to lack of insurance, although there is no indication that this unfortunate situation was used against Plaintiff:

> Records show a brief period of physical therapy, beginning in September 2010, wherein the claimant notes improvement after treatment. Safaa, M. Fathy, P.T., instructed the claimant on a home exercise program. **Despite continued improvement, the claimant discontinued treatment because of a lack of insurance after only six weeks** (Ex. 12F). On August 17, 2011, the claimant reported to the Middle Tennessee Medical Center with lumbar pain, stating the onset was only two days prior (Ex. 22F). Records show the claimant returned to physical

> therapy wherein Ms. Fathy recommended a home exercise program and the claimant
> was showing improvement (Ex. 28F).

AR 17 (emphasis added). There is no indication that the ALJ intended anything other than to acknowledge Plaintiff's lack of insurance, which is necessary when considering a claimant's credibility under SSR 96-7p:

> . . .the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed **and there are no good reasons for this failure**.

(emphasis added). SSR 96-7 also provides examples of explanations which may provide insight into the claimant's credibility, including: "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." As such, the ALJ appears to have acknowledged Plaintiff's lack of insurance in weighing her credibility, as required by SSR 96-7p.

Plaintiff contends that the ALJ "essentially failed to explain his reasons" for questioning her credibility. Based on the foregoing discussion, the Court cannot agree with this assessment of the ALJ's opinion. The Court therefore must defer to the ALJ's determination of Plaintiff's credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

## V. RECOMMENDATION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) be DENIED and that the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with

particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

       Respectfully Submitted,

BARBARA D. HOLMES
United States Magistrate Judge